UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| United States of America, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 11 CR 440 |
| Ernest Shields, | ) | Judge Ruben Castillo |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Defendant Ernest Shields ("Shields") was charged by a grand jury indictment with knowingly possessing a firearm that had traveled in interstate commerce prior to Shields's possession of it, in violation of 18 U.S.C. §§ 922(g) and 924(e)(1), after Shields had previously been convicted of a crime punishable by a term of imprisonment exceeding one year. (R. 1, Indictment.) According to the government, on January 10, 2011, at approximately 8 p.m., Chicago Police Department Officers Craig Coglianese and David Bachler observed Shields sitting in his car in a crosswalk. (Pl.'s Resp. at 1.) The officers approached the car and asked Shields for his driver's license. (*Id.*) Shields handed his license to Officer Coglianese and then got out of his car and took off running away from the officers. (*Id.* at 1-2.) Officer Coglianese followed Shields on foot. (*Id.* at 2.) As Shields turned left into an alley, he pulled a gun out of his right coat pocket. (*Id.*) When asked about the gun, Shields allegedly stated, "I shouldn't have had that weapon on me." (*Id.*) Presently before the Court is Shields's motion to suppress the evidence of the gun and his statement concerning the gun. (R. 41, Def.'s Mot.) The Court conducted an evidentiary hearing on October 17, 2012 with respect to Shields's motion to

1

suppress. (R. 55, Min. Entry.) Three witnesses testified at the hearing—Officers Bachler and Coglianese, as well as an acquaintance of Shields named Corey Flournoy. For the reasons set forth herein, Shields's motion to suppress the evidence and the statement is denied.

## RELEVANT FACTS[1]

On January 10, 2011, at approximately 8 p.m., Chicago Police Department Officers Coglianese and Bachler were on routine patrol in an unmarked police car in the vicinity of May Street and 101st Street in Chicago, Illinois. (Tr. at 23:13-24:17.) The officers observed Shields sitting in his car on the side of May Street. (Tr. at 59:18-19.) Shields's car was parked on a crosswalk at the northeast corner of 101st Street and May Street. (Tr. at 27:5-8; Tr. at 59:25-60:1.) Approximately half of the vehicle was blocking the crosswalk. (Tr. at 27:13.) The officers pulled up alongside Shields's car and stopped. (Tr. at 27:15-16.) The officers stopped because Shields's vehicle was parked illegally. (Tr. at 27:23.) It is unlawful to block a crosswalk in the City of Chicago. (Tr. at 28:9.) Officer Coglianese opened the passenger side vehicle door, stepped out of the car, and asked Shields for his driver's license. (Tr. at 27:16-21.)

Shields handed his driver's license to Officer Coglianese. (Tr. at 28:15-16.) After handing Officer Coglianese his driver's license, Shields stepped freely out of his car. (Tr. at 54:22.) Officer Bachler then stepped out of his vehicle and came around to the front of it. (Tr. at 28:17-18; Tr. at 54:24-25.) Officer Coglianese then asked Shields to step to the back of both vehicles. (Tr. at 60:12-15.) As Officer Bachler came around the car, Shields took off running away from the officers. (Tr. at 28:19-21.) Officer Coglianese followed Shields on foot as he ran

---

[1] The relevant facts are drawn from the evidentiary hearing that the Court conducted on October 17, 2012. Citations to "Tr." are citations to the transcript of that hearing.

2

eastbound between May Street and the alley off of 101st Street and then northbound up the alley. (Tr. at 60:19-25.) As Shields turned northbound up the alley, he pulled a gun out of his right coat pocket. (Tr. at 61:2-3.) Officer Coglianese pursued Shields into a vacant lot and pushed Shields from behind, causing Shields to fall to the ground. (Tr. 61:5-7.) Officer Bachler arrived soon thereafter in the unmarked police car. (Tr. at 61:12.)

Officers Coglianese and Bachler placed Shields in custody and handcuffed him, and Shields stood up off the ground. (Tr. at 31:10-15.) Underneath Shields was the revolver that Officer Coglianese had seen Shields pull out of his pocket. (Tr. at 61:12-14.) The revolver was a fully loaded, six shot 22-caliber pistol. (Tr. at 61:13-14.) Officer Coglianese then searched Shields but did not find any other weapons or contraband on Shields's person. (Tr. at 62:5-10.)

After searching Shields, but before asking him any questions, Officer Coglianese gave Shields the *Miranda* warnings. (Tr. at 62:11-18.) When asked by the officers about the gun, Shields stated, "I shouldn't have had that weapon on me." (Tr. at 63:17-19.) Following his arrest, Officer Coglianese ticketed Shields for blocking the crosswalk. (Tr. at 64:7-65:3.) Officer Bachler searched Shields's car following his arrest but did not find any weapons or contraband. (Tr. at 33:12-17.)

Corey Flournoy's testimony only indicated that he was parked down the street from Shields's police encounter and overheard a loud verbal exchange between the officers and Shields near the side of Shields's car. (Tr. at 72:22-25-73:1-7; Tr. at 74:8-25-75:6.) Importantly, he did not indicate that he saw Shields touched or taken into custody by the officers. (Tr. at 75:13-25.) Shields chose not to testify at his suppression hearing.

The amended indictment in this case charges Shields with possession of a firearm on

January 10, 2011 following a felony conviction. (R. 44, Pl.'s Resp. at 2.) Prior to January 10, 2011, Shields had multiple felony convictions including: (a) armed robbery; (b) unlawful use of a firearm in a vehicle by a felon; (c) residential burglary; and (d) aggravated battery. (*Id.*) Shields was on parole for armed robbery when he was arrested in this case. (*Id.* at 2-3.)

## PROCEDURAL HISTORY

On June 22, 2011, Shields was charged with violating 18 U.S.C. §§ 922(g) and 924(e)(1). (R. 1, Indictment.) An arraignment was held on July 14, 2011, at which Shields appeared and entered a plea of not guilty. (R. 10, Min. Entry.) On April 11, 2012, the Court set a deadline for any pretrial motions to be filed on or before May 7, 2012. (R. 34, Min. Entry.) On June 27, 2012, Shields filed the instant motion to suppress. (R. 41, Def.'s Mot.) The government responded to Shields's motion on July 25, 2012. (R. 44, Def.'s Resp.) On September 12, 2012, the Court directed Shields to execute a sworn declaration in support of his motion. (R. 49, Min. Entry.) Shields filed an affidavit on September 24, 2012. (R. 50, Def.'s Aff.) On October 17, 2012, the Court conducted an evidentiary hearing on Shields's motion to suppress. (R. 55, Min. Entry.)

## LEGAL STANDARD

A defendant who seeks an evidentiary hearing to suppress evidence bears the ultimate burden of proof and persuasion in making a *prima facie* showing of illegality. *See U.S. v. Randle*, 966 F.2d 1209, 1212 (7th Cir. 1992). "Reliance on vague, conclusory allegations is insufficient." *Id.* To obtain a suppression hearing, a defendant must present "definite, specific, detailed, and nonconjectural facts that justify relief." *Id.* (internal quotation marks omitted). Additionally, the defendant has the burden of establishing that his own Fourth Amendment rights

were violated by the challenged seizure. *Id.* Once the defendant satisfies his initial burden sufficiently to warrant an evidentiary hearing to suppress evidence, the burden shifts to the government to show that the disputed evidence was legally obtained. *U.S. v. Ienco*, 182 F.3d 517, 528 (7th Cir. 1999). In a traffic stop case, the government must prove by a preponderance of the evidence that the stop was reasonable, meaning that there was probable cause to believe that the defendant committed a traffic violation. *U.S. v. Basinski*, 226 F.3d 829, 833-34 (7th Cir. 2000).

In a motion to suppress a statement, the burden is on the defendant to "make specific factual allegations of illegality, to produce evidence and persuade the court that the evidence should be suppressed." *U.S. v. Madison*, 689 F.2d 1300, 1308 (7th Cir. 1982) (internal quotation marks omitted). "[A] voluntary statement by a defendant not in response to interrogation is admissible at trial and not in violation of the defendant's fifth amendment rights." *Id.* at 1307. Only if the defendant establishes a basis for his motion does the burden shift to the government to prove by a preponderance of the evidence that the statement was given voluntarily. *Id.* Voluntariness is a question of fact to be determined from the totality of the circumstances. *Id.*

## ANALYSIS

Shields first claims that the traffic stop of his car was without probable cause or reasonable suspicion. (R. 41, Def.'s Mot. at 2.) Probable cause to arrest exists when a police officer has knowledge of facts and circumstances such that he could reasonably believe that an individual was committing, or had committed, a crime. *U.S. v. Reed*, 443 F.3d 600, 603 (7th Cir. 2006). Probable cause to arrest under the Fourth Amendment exists if an objectively reasonable officer would believe that an individual was committing, or had committed, *any* criminal offense

5

in his presence, no matter how minor that offense may be. *Fox v. Hayes*, 600 F.3d 819, 837 (7th Cir. 2010) (citing *Devenpeck v. Alford*, 542 U.S. 146, 153-56 (2004)). Police officers can stop an automobile when they have probable cause to believe that a traffic violation has occurred. *U.S. v. Muriel*, 418 F.3d 720, 724 (7th Cir. 2005) (citing *Whren v. U.S.*, 517 U.S. 806, 810 (1996)); *see also U.S. v. Hernandez-Rivas*, 348 F.3d 595, 599 (7th Cir. 2003) (citing *Atwater v. City of Lago Vista*, 532 U.S. 318, 322 (2001)). "Probable cause exists when the circumstances confronting a police officer support the reasonable belief that a driver has committed even a minor traffic offense." *Id.* (quoting *U.S. v. Cashman*, 216 F.3d 582, 586 (7th Cir. 2000)) (internal quotation marks omitted).

In the instant case, the officers conducted a legal traffic stop of Shields because the officers had probable cause to believe that Shields had committed a traffic offense. Pursuant to City of Chicago Municipal Code § 9-64-110(c), it is illegal in the City of Chicago to stand or park any vehicle on a crosswalk. Thus, the officers had probable cause to stop Shields because they observed him in a vehicle parked on a crosswalk. *See U.S. v. Thornton*, 197 F.3d 241, 248 (7th Cir. 1999) ("If the police may approach someone on a public street for no reason, and if police may pull over a vehicle if there is probable cause that a civil traffic violation has been committed, then [the police officers] surely did not violate the Fourth Amendment by walking up to [the defendant], who was sitting in a car that rested in a spot where it was violating one of Chicago's parking regulations."); *see e.g., Matos v. City of Racine*, No. 06–CV–1011, 2009 WL 187921, *4-*5 (E.D. Wisc. Jan. 23, 2009) (police officers had probable cause to arrest a defendant who violated a Wisconsin traffic regulation regarding parallel parking). Moreover, Shields does not dispute that the officers had probable cause to stop him because he concedes in

his motion that the officers stopped to issue him a traffic ticket. (R. 41, Def.'s Mot. at 3.)

Police can stop and detain a person for investigative purposes pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968). In this case, the officers conducted a valid *Terry* stop of Shields. *Terry* stops are permissible if the officer has a reasonable suspicion supported by articulable facts that criminal activity "may be afoot," *id.* at 21-22; *U.S. v. Sokolow*, 490 U.S. 1, 7 (1989); *U.S. v. Vega*, 72 F.3d 507, 515 (7th Cir. 1995), or that a person is committing or has committed a crime, *U.S. v. Feliciano*, 45 F.3d 1070, 1072 (7th Cir. 1995). A *Terry* stop is a brief detention that gives police officers a chance to verify (or dispel) well-founded suspicion that a person has been, currently is, or is about to be engaged in criminal conduct. *U.S. v. Bullock*, 632 F.3d 1004, 1014-15 (7th Cir. 2011). "For an investigative stop based on reasonable suspicion to pass constitutional muster, the investigation following it must be reasonably related in scope and duration to the circumstances that justified the stop in the first instance so that it is a minimal intrusion on the individual's Fourth Amendment interests." *U.S. v. Smith*, Nos. 11-2128, 11-2398, 2012 WL 4676970, at *5 (7th Cir. Oct. 4, 2012) (internal quotation marks omitted). In turn, the reasonableness of a particular stop depends on the extent of the intrusion on the rights of the individual as well as the reason for the restraint. *Id.*

Reasonable suspicion is something less than probable cause and something more than a mere hunch. *Bullock*, 632 F.3d at 1012. In ascertaining whether a particular stop is supported by reasonable suspicion, courts consider the totality of the circumstances known to the officer at the time of the stop. *Id.* Because reasonable suspicion is a less demanding standard than probable cause, it can arise from information that is less reliable. *Alabama v. White*, 496 U.S. 325, 330 (1990). Law enforcement officers are entitled to "draw reasonable inferences from the facts

7

before them, based upon their training and experience." *U.S. v. Funches*, 327 F.3d 582, 586 (7th Cir. 2003) (citing *U.S. v. Carrillo*, 269 F.3d 761, 766 (7th Cir. 2001)). The fact that the circumstances "may have been independently susceptible to innocent explanation does not negate their collective contribution to [the officer's] reasonable suspicion under the totality of the circumstances." *U.S. v. Richmond*, 641 F.3d 260, 262 (7th Cir. 2011). The facts and circumstances known to Officers Coglianese and Bachler at the time of the stop in this case lead to the conclusion that they had reasonable suspicion to stop Shields because he was parked on a crosswalk, which is a violation of the Chicago Municipal Code.

Shields cites a decision from the Ninth Circuit, *U.S. v. Grigg*, 498 F.3d 1070, 1075-83 (9th Cir. 2007), for the proposition that the Fourth Amendment does not allow law enforcement officers to conduct an investigatory detention on the basis of reasonable suspicion that a person committed a misdemeanor that poses no threat to public safety. (Def.'s Mot. at 2-3.) As an initial matter, *Grigg* is an out-of-circuit decision and therefore is not binding on this Court. *See Townsel v. DISH Network L.L.C.*, 668 F.3d 967, 970 (7th Cir. 2012) ("It takes an appellate decision to resolve a legal question—*and then only within the circuit's territory*, and subject to review by the Supreme Court, which may reject an appellate consensus.") (emphasis supplied). Furthermore, *Grigg* involved a *Terry* stop of a car by police officers to investigate whether the driver had, in the preceding days, been playing his car stereo too loud in violation of a local noise ordinance. *Grigg*, 498 F.3d at 1072-73. The Ninth Circuit held that when the police conduct a *Terry* stop to investigate a misdemeanor that has already been completed, the nature of the misdemeanor—in other words, the public safety factor—is only one factor that a court should consider within the totality of the circumstances in balancing the privacy interests of an

individual against the efficacy of a *Terry* stop. *Id.* at 1081. Therefore, the holding in *Grigg*, even if it was binding on this Court, does not apply to Shields because the officers stopped Shields while he was in the act of violating the Chicago Municipal Code by parking on a crosswalk. The officers' reasonable suspicion that Shields was violating the law justified their stop of him. The Court finds that there was probable cause to believe that Shields committed a traffic violation, and therefore the government has satisfied its burden of proving by a preponderance of the evidence that the stop was reasonable. *Basinski*, 226 F.3d at 833-34.

Shields next claims that the officers conducted an illegal search of his car and his person. (Def.'s Mot. at 2.) Shields claims that after the officers stopped him to issue a parking ticket, they pulled him out of the car and searched him and his vehicle. (*Id.*) Shields argues that "[a]fter the unlawful detention of Ernest Shields by the Chicago Police Department a weapon was discovered that has been attributed to Ernest Shields." (*Id.* at 4.)

First, the Court notes that there is absolutely no evidence that Shields was pulled out of his car. No witness testified to such a fact. The Court further concludes that Shields was never objectively taken into custody by his car because he immediately fled when asked to step to the back of his vehicle for the *Terry* investigative stop.

Shields has also not established that the gun was seized illegally during the search of his car and person because he does not claim that the officers seized the gun from his car or person. Shields's motion is silent with respect to exactly where and when the police recovered the gun. The uncontroverted evidence from the suppression hearing establishes that the officers found the gun in plain view after Shields was legally arrested following a traffic stop that was reasonable in duration. The detention of an individual following a traffic stop supported by probable cause

must be reasonable. *U.S. v. Carpenter*, 406 F.3d 915, 916 (7th Cir. 2005). In conducting a traffic stop, it is reasonable for the police to ask the vehicle's occupants a moderate number of questions and to request their identification. *Muriel*, 418 F.3d at 726 (citing *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984)). In this case, Officers Coglianese and Bachler barely had time to ask for and examine Shields's driver's license before Shields fled.

Shields's flight provided the officers with probable cause to arrest him for resisting arrest. In Illinois "[a] person who knowingly resists or obstructs the performance by one known to the person to be a peace officer, firefighter, or correctional institution employee of any authorized act within his official capacity commits a Class A misdemeanor." 720 Ill. Comp. Stat. 5/31-1. After a brief foot chase in which Shields drew a fully-loaded revolver out of his pocket, Officer Coglianese knocked Shields to the ground. When Shields got up off of the ground, the officers found the revolver on the ground where Shields had been lying. Once the officers saw the gun in plain view, they had the right to seize the gun, which they did. *See U.S. v. Raney*, 342 F.3d 551, 558-59 (7th Cir. 2003) (holding that when an officer who is lawfully present sees an object in plain view, and the incriminating nature of the object is readily apparent, the object can be seized under the plain view doctrine). As Shields does not claim that the officers recovered any evidence that should be suppressed during the search of either his car or his person, both searches are irrelevant. The Court finds that the government has met its burden to show that the disputed evidence was legally obtained. *Ienco*, 182 F.3d at 528.

Finally, Shields claims that "[a]s the direct and indirect and indirect [sic] fruits of the unlawful detention of Ernest Shields the police elicited verbal and gestural signals/statements from him. These statements were while in custody without advising of his right to remain silent

10

pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966) and in violation of his rights under the Fourth Amendment. The statement was made involuntarily." (Def.'s Mot. at 4.)

A confession is voluntary if, based on the totality of the circumstances, "it was not secured through psychological and physical intimidation but rather was the product of a rational intellect and free will." *U.S. v. Ceballos*, 302 F.3d 679, 694 (7th Cir. 2002). The Seventh Circuit has identified several factors that are relevant to determining the voluntariness of a confession, including, but not limited to, whether the defendant was read his *Miranda* rights, the defendant's age, the duration and nature of the questioning, and whether the defendant was physically punished. *Id.* (citing *U.S. v. Sablotny*, 21 F.3d 747, 750 (7th Cir. 1994)).

Shields's motion does not establish that his confession was involuntary. Indeed, he fails to even identify whether he made a statement or gestures. Shields's motion does not address how the officers secured his statement through physical or psychological intimidation. Shields makes no claim that he was mistreated, or deprived of necessities, nor does he claim to have been physically punished. There is no allegation that Shields's mental state was unbalanced at the time he made the statement, or that he was unable to comprehend what was happening. Furthermore, the duration of the questioning was short and seems to have only consisted of the officers asking Shields a few questions about his possession of the gun. Shields has failed to provide any facts demonstrating that his confession was, in fact, involuntary. Shields has failed to "make specific factual allegations of illegality, to produce evidence and persuade the court that the evidence should be suppressed." *Madison*, 689 F.2d at 1308 (internal quotation marks omitted).

At the suppression hearing, both Officers Coglianese and Bachler gave consistent and

credible testimony which indicated that Shields was verbally advised of his *Miranda* rights prior to making his statement. The Court easily concludes that the statement was made voluntarily.

## CONCLUSION

For the reasons set forth above, Shields's motion to suppress the evidence and the statement (R. 41) is DENIED.

ENTERED:

**Judge Ruben Castillo**

**United States District Court**

**Dated: November 2, 2012**